# NO. PD-0751-15

To The Texas Court of Criminal Appeals
Austin, Texas

JOSE GUADALUPE MARTINEZ,

*Defendant-Appellant,*

vs.

THE STATE OF TEXAS,

*Plaintiff-Appellee.*

On Appeal From The 38th Judicial District Court
Real County, Texas
Trial Court No. 2012-1132-DR; Appeal No. 04-12-00739-CR

## JOSE GUADALUPE MARTINEZ'S
## PETITON FOR DISCRETIONARY REVIEW

** Oral Argument Requested **

MEGAN V. COOK
Cook and Cook Law Firm
115 East Travis, Suite 1620
San Antonio, Texas 78205
(210) 271-2800
Texas Bar No. 24065072
cookandcooklaw@gmail.com

NANCY B. BAROHN
1202 South Alamo Street
San Antonio, Texas 78210
(210)226-4263
(913) 302-6808 (cell phone)
Texas Bar Number: 01796500
nbb@airmail.net

*Attorneys for Mr. Jose Guadalupe Martinez,*
*Petitioner-Appellant*

# IDENTITY OF THE JUDGE, PARTIES, AND COUNSEL

1.    **Honorable Camille DuBose,** Judge of the 38th Judicial District, presided at all proceedings.

2.    **Mr. Jose Guadalupe Martinez** is the Petitioner-Appellant.

## Counsel For Petitioner:

In the trial court, Petitioner was represented by:

> Mr. Bob Galvan
> Post Office Box 426
> Leakey, Texas 78873
>
> and
>
> Ms. Nancy B. Barohn
> 1202 South Alamo Street
> San Antonio, Texas 78210

Petitioner was represented in the Fourth Court of Appeals, and is represented

in this Court by:

> Ms. Nancy B. Barohn
> 1202 South Alamo Street
> San Antonio, Texas 78210
>
> and
>
> Ms. Megan V. Cook
> Cook and Cook Law
> 115 Travis Street, Suite 1620
> San Antonio, Texas 78205

**<u>Counsel For The State</u>:**

The State of Texas was represented in the trial court by:

> Mr. Daniel J. Kindred and
> Ms. Christina Busbee
> District Attorney for the 38th Judicial District
> 3102 Avenue G
> Hondo, Texas 78861

The State of Texas was represented in the Fourth Court of Appeals by

> Mr. Daniel J. Kindred
> District Attorney for the 38th Judicial District
> 3102 Avenue G
> Hondo, Texas 78861

> and

> Mr. Edward Shaughnessy, III
> 206 East Locust Street
> San Antonio, Texas 78212

The State has yet to designate its counsel in this Court.

# TABLE OF CONTENTS

**Page**

IDENTITY OF THE PARTIES ............................................. i

TABLE OF CONTENTS ............................................... iii

INDEX OF AUTHORITIES ............................................ vi

STATEMENT REGARDING ORAL ARGUMENT ..................... viii

STATEMENT OF THE CASE ........................................ ix

STATEMENT OF THE PROCEDURAL HISTORY
    OF THE CASE ................................................... x

SOLE GROUND FOR REVIEW ....................................... 1

I.    IN AFFIRMING PETITIONER'S CONVICTIONS, THE FOURTH COURT OF
    APPEALS DECLINED TO ADDRESS HIS CONSTITUTIONAL CLAIMS,
    CONTRARY TO TEX. R. APP. P. 47.1 ................................. 1

    A.    What The Court of Appeal Held ............................... 1

    B.    Reasons For Review ........................................ 2

    C.    Statement of Facts ......................................... 3

        1)    *Testimony of Mark Spaniel* ............................. 3

        2)    *Complainant's Testimony* ............................. 4

        3)    *Testimony of Deanna Hagy* ........................... 8

# TABLE OF CONTENTS (Continued)

**Page**

ARGUMENT ................................................. 10

    A.    Petitioner's Constitutional Claims Were Fully And Fairly
        Presented .......................................... 10

    B.    Petitioner Made Timely And Proper Requests To Question
        Witnesses And Offer Evidence, Supported By Decisional
        Authority .......................................... 11

    C.    In Sum ............................................ 14

PRAYER ................................................... 14

CERTIFICATE OF SERVICE ................................. 16

CERTIFICATE OF COMPLIANCE ............................ A-1

APPENDIX:    Copy of Opinion in *Jose Guadalupe Martinez v. State
                 of Texas, Slip op.* No. 04-12-00739-CR; 2014 WL
                 5464157 (Tex.App. - San Antonio, October 29, 2014)
                 (not designated for publication).

# INDEX OF AUTHORITIES

**Cases**                                                                   **Page**

*Alford v. United States*,
282 U.S. 687 (1931) .......... 13

*Allen v. State*, 2014 WL 3587372
(Tex.App. - Houston [14th Dist.] 2014) .......... 2

*Crawford v. Washington*,
541 U.S. 36 (2004) .......... 10

*Davis v. Alaska*,
415 U.S. 308 (1974) .......... 10

*Delaware v. Van Arsdall*,
475 U.S. 673 (1986) .......... 10

*Hammer v. State*, 296 S.W.3d 555
(Tex.Crim.App. 2009) .......... 10

*Irby v. State*, 327 S.W.3d 138
(Tex.Crim.App. 2010) .......... 13

*Johnson v. State*, 2014 WL 5583345
(Tex.App. - Fort Worth, 2014) .......... 11

*Martinez v. State*, 2014 WL 5464157
(Tex.App. - San Antonio, 2014) .......... x,1

*Mayes v. State*, 816 S.W.2d 79
(Tex.Crim.App. 1991) .......... 12

*Perry v. State*, 236 S.W.3d 859
(Tex.App. - Texarkana, 2007) .......... 12

# INDEX OF AUTHORITIES (Continued)

**Cases**                                                                                    **Page**

*Potier v. State*, 68 S.W.3d 657
(Tex.Crim.App. 2002) ............................................. 2,10,11

*Rogers v. State*, 853 S.W.2d 29
(Tex.Crim.App. 1993) ................................................. 12

*Saglimbeni v. State*, 100 S.W.3d 429
(Tex.App. - San Antonio, 2002) .................................... 12

*Saucier v. State*, 235 S.W.2d 903
(Tex.Crim.App. 1950) ................................................ 12

*Sherman v. State*, 20 S.W.3d 96
(Tex.App. - Texarkana, 2000) ..................................... 12

*Simmons v. State*, 548 S.W.2d 386
(Tex.Crim.App. 1977) ................................................ 11

*Swarb v. State*, 125 S.W.3d 672
(Tex.App. - Houston [1st Dist.] 2003) ........................... 12

*United States v. Skelton*, 514 F.3d 433
(5th Cir. 2008) ........................................................ 11

*Wiley v. State*, 74 S.W.3d 399
(Tex.Crim.App. 2002) .................................................. 2

**Statutes**

TEX. PENAL CODE § 21.02 ............................................ ix

TEX. PENAL CODE § 22.01 ............................................ ix

# INDEX OF AUTHORITIES (Continued)

**Statutes**                                                                    **Page**

TEX. R. APP. P. 38.9 ............................................................. 13

TEX. R. APP. P. 47.1 ............................................................. 1,2


**Rules**

TEX. R. APP. P. 66.3(c) .......................................................... 14

# STATEMENT REGARDING ORAL ARGUMENT

Should this petition be granted, Petitioner requests oral argument if it would be of benefit to the Court.

## STATEMENT OF THE CASE

On December 3, 2010, Petitioner Jose Guadalupe Martinez was charged by Indictment with continuous sexual assault of a child, contrary to TEX. PENAL CODE § 21.02. (1 C.R., 1)[1] On August 28, 2012, Petitioner moved to quash the indictment, (1 C.R., 179-86), and on September 28, 2012, a superseding indictment was returned charging Petitioner with two counts of sexual assault of a child, in violation of TEX. PENAL CODE § 22.01. (2 C.R., 279-80)

Petitioner's trial began on October 22, 2012, in the 38th Judicial District, before the Honorable Camille DuBose. (5 R.R., 1) On October 25, 2012, the jury found Petitioner guilty of each count. (2 C.R., 309-10, 348-49, 355-56; 8 R.R., 170-71) Petitioner elected to go to the jury for punishment, (2 C.R., 372-73), and on October 26, 2012, it returned a punishment verdict recommending a 5-year term of confinement on Count One, and a 10-year term of confinement on Count Two. (2 C.R., 316-19, 348-49, 355-56; 9 R.R., 143) The jury declined to recommend a fine. (*Id.*) Judge DuBose ordered that these sentences be cumulated, and sentenced

---

[1]The Record on Appeal is contained in 14 volumes, and consists of a two-volume Clerk's Record, and a 12-volume Reporter's Record. Citations to the Clerk's Record will be to volume and page, as above. Citations to the Reporter's Record will, similarly, be to volume and page as, *e.g.* (1 R.R., p).

Petitioner to a total term of 15 years' confinement in the Texas Department of Criminal Justice, Institutional Division. (2 C.R., 320; 9 R.R., 147-48)

On October 31, 2012, Petitioner filed a timely Notice of Appeal. (2 C.R., 321-22) Judge DuBose certified Petitioner's right to appeal. (2 C.R., 326)

## STATEMENT OF THE PROCEDURAL HISTORY
## OF THE CASE

On October 29, 2014, a panel of the Fourth Court of Appeals, consisting of Chief Justice Stone, and Justices Angelini and Chapa, affirmed Petitioner's convictions in an unpublished *Memorandum Opinion, Slip op.* No. 04-12-00739-CR, 2014 WL 5464157 (Tex.App. - San Antonio, October 29, 2014) (not designated for publication). A copy of the Westlaw Opinion is appended here.

Petitioner prepared a 37-page *Petition for Rehearing* which he submitted on January 26, 2015, with a motion requesting leave to file the petition out-of-time. On January 28, 2015, the Fourth Court denied Petitioner's request to his *Petition for Rehearing* out-of-time.

Petitioner sought, and received, an extension of time to Wednesday, March 18, 2015, to file this *Petition for Discretionary Review.*

# SOLE GROUND FOR REVIEW

**IN AFFIRMING PETITIONER'S CONVICTIONS, THE FOURTH COURT OF APPEALS DECLINED TO ADDRESS HIS CONSTITUTIONAL CLAIMS, CONTRARY TO TEX. APP. P. 47.1.**

In two points of error, Petitioner contended that he was deprived of his due process right to present a meaningful defense through the trial court's extreme restriction on cross-examination. At trial, Petitioner was not permitted to cross-examine either the complainant, or his father–or impeach their testimony through a witness in his own case–under well recognized constitutional principles and rules of law. Throughout, Petitioner made timely and proper objections to the trial court's rulings on both evidentiary and constitutional grounds. The record includes Petitioner's lengthy proffers with supporting exhibits, and lengthy bills of exception.

## A.    What The Court Of Appeals Held.

The Court of Appeals declined to rule on Petitioner's constitutional claims, finding that he "failed to present his due process argument in a way that would allow this court to conclude his constitutional right to present a meaningful defense was violated." APP.X., *Martinez v State, supra,* 2014 WL 5464157 at *6. Though acknowledging that Petitioner's proffered evidence "may have been admissible to show bias or motive or for some other evidentiary purpose," the Court refused to review Petitioner's constitutional claims because he failed to show how each of the

1

trial court's evidentiary rulings was clearly erroneous. *Id.* Misinterpreting *Wiley v. State*, 74 S.W.3d 399, 406 (Tex.Crim.App, 2002), the Court of Appeals concluded that a ruling-by-ruling analysis was "a necessary prerequisite" for Petitioner to "prevail on his due process claim." *Id.* at 11, citing *Allen v. State*, 2014 WL 3587372 at *8 (Tex.App. - Houston [14th Dist.], July 22, 2014) (not designated for publication). *Id.*

## B.   Reasons For Review.

We seek review because the Court of Appeals failed to comply with Texas Rule of Appellate Procedure 47.1, which requires that a court:

> . . . hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.

We seek review because the Court of Appeals misinterpreted *Wiley v. State*, 74 S.W.3d 399 (Tex.Crim.App. 2002), as a basis to decline review of Petitioner's preserved and presented constitutional issues unless an evidentiary error was shown. The Court of Appeals' interpretation of *Wiley* is contrary to this Court's precedent, *Portier v. State*, 68 S.W.3d 657 (Tex.Crim.App. 2002), to decisions of the Supreme Court of the United States, and improperly restricts the rights of an accused.

2

## C. Statement Of Facts.

At trial, Petitioner attempted to explore several lines of inquiry through the complainant; his father, Mark Spaniel; and Deanna Hagy. Through these witnesses, Petitioner sought to prove 1) complainant's troubled history, including mental illness; 2) specific instances of complainant's sexual and other misconduct occurring closely in time to his outcry; 3) the events occurring on the day of the outcry; and, 4) evidence that complainant was in a custodial environment at the time of the outcry, following an assault upon his father. Petitioner's objections to the trial court's rulings precluding him from exploring these lines of inquiry with each of these witnesses, and the trial court's rulings, were repetitive and largely the same.

### 1) *Testimony of Mark Spaniel.*

Complainant's father, Mark Spaniel, described a call his wife received advising her that complainant reported being sexually abused by Petitioner two years earlier. (7 R.R., 38) This was shortly followed by another call–this one from Child Protective Services ("CPS")–letting the Spaniels know "that they were going to be coming in and doing an investigation." (*Id.*, 43) Twice on direct examination, Spaniel denied that CPS was investigating either him or his family, and was evasive in response to the State's question why CPS would call him about an investigation into Petitioner.

3

(*Id.*, 43-4) Spaniel related that complainant was living in the family home at the time of the alleged abuse, and at the time of trial. (*Id.*, 48)

Outside the presence of the jury, Petitioner asked to question Spaniel about **another call** they received that same day–this one from Pathways (a juvenile custodial camp), advising them that their son had been accused of engaging in oral sex with a peer and had been reported to CPS for investigation. (*Id.*, 49-50) Petitioner argued that this was contextual, and relevant to rebut the false impression created by Spaniel's one-sided story. (*Id.*) Petitioner asked to question Spaniel about his son's history of behavioral and mental health disturbances, (*Id.*, 51), the custodial nature of Pathways, and the reason for his son's placement there. (*Id.*, 55-8) Petitioner was not permitted to ask Spaniel any of these questions, or pursue any of these lines of inquiry. (*Id.*, 51-8)   Petitioner objected that the court's rulings deprived him of his due process right put on a meaningful defense by denying him his Sixth Amendment right to confront and cross-examine Spaniel. (*Id.*, 54-5)

## 2)   *Complainant's Testimony.*

For the State, complainant testified that he was 18 years old, attending college, and living at home. (7 R.R., 79-80) Complainant reported to a "counselor" that, two years earlier, Petitioner sexually abused him  (*Id.*, 110-11)

4

Outside the presence of the jury, through lengthy proffers and bills of exception, Petitioner asked to cross-examine complainant about his troubled history–both before and after his placement at Pathways–the reason for his placement at Pathways, the issues he was to address there, his mental illness and medications, his history of frequent discipline at Pathways, his accelerating misbehaviors occurring shortly before his outcry, and the allegation of sexual assault made against him on the day of the outcry which was reported to CPS. (*Id.*, 118-25)

Outside the presence of the jury, complainant testified that he was sent to Pathways in April of 2010, after destroying property in the family home and assaulting his father. (*Id.*, 148) Pathways was a wilderness camp, like an alternative school. (*Id.*) He lived in an un-air-conditioned cabin, and walked two miles to school each way. (*Id.*, 149) Complainant could not leave, or contact his parents, without permission. (*Id.*, 150)

Complainant's behavioral problems began in middle school where he was frequently disciplined and ultimately expelled for misconduct. (*Id.*, 137-42) In 2009, complainant had two psychiatric hospital admissions for his "rages." (*Id.*, 143, 146-47) Complainant was prescribed Depakote and Abilify for bipolar disorder, which he continued to take while at Pathways. (*Id.*, 144-45,148) Prior to going to Pathways, complainant got in trouble at home for lying to his parents. (*Id.*, 156-59)

5

This was a behavior he was supposed to work on at Pathways in counseling with Chris Daniel, along with manipulative behaviors, and physical aggression. (*Id.*, 157, 159) Complainant's rages continued at Pathways, and he was often in trouble. (*Id.*, 151-54, 157-58) Disciplinary measures meted out to complainant varied, and, on many occasions, he was placed in physical restraints. (*Id.*, 154-55) Complainant did not want to be at Pathways. (*Id.*, 154)

Complainant made his outcry against Petitioner on August 17, 2010. (11 R.R., *Defendant's Proffer Exhibit* No. 10) In the month preceding the outcry, complainant was written up for misbehavior on a number of occasions: 1) On July 20, 2010, complainant was written up for blowing into a peer's ear; 2) On August 1, 2010, complainant was instructed by night staff to leave another resident's bunk area but refused, sat on resident's toes, and invited him to go outside to see a picture of his girlfriend; 3) also on August 1st, complainant exhibited extreme grooming-type behaviors with another resident throughout the day; 4) on August 3, 2010, complainant had difficulty keeping his conversation appropriate; 5) on August 5, 2010, complainant was reported for fighting and was placed in restraints; and, 6) On August 16, 2010, complainant received marks for possessing contraband and sexually explicit material in his area. (7 R.R., 117-21; 11 R.R., *Defendant's Proffer Exhibit* No. 9) Confronted with these documented incidents, complainant denied getting in

6

trouble, testified that he **never** engaged in any inappropriate behavior at Pathways, and only got in trouble one time, for possessing a magazine that was wrongly described as pornography. (7 R.R., 165-66)

On April 13, 2010, complainant reported to Chris Daniel that his bipolar medications weren't working anymore, and on July 20, 2010, reported that he led "a double life" and a "secret life" "which requires client to lie." (10 R.R., *Defendant's Proffer Exhibit* No. 16) Complainant did not recall making these statements, and told Daniel only that he did not want to take the medications. (*Id.*, 154, 160, 163-64)

On August 17, 2010–the day of the outcry–complainant was accused of engaging in oral sex with a peer and was informed that CPS would conduct an investigation. (*Id.*, 120-21) Complainant was immediately transferred to the caseload of Deanna Hagy, a Licensed Sexual Offender Treatment Provider, for sex offender treatment. (*Id.*, 120-22) Hagy invited complainant to report if he had ever been the victim of sexual abuse, and it was then that complainant made his outcry against Petitioner. (*Id.*)

The court would not permit Petitioner to ask complainant about **any** of these matters before the jury. (*Id.*, 125-31,176-78) Petitioner argued numerous grounds for admissibility–to show context, to correct the false impression left by complainant

(that he was simply a young college student), to show complainant's bias and motive (to avoid punishment, and to portray himself as a victim and not a perpetrator), and to challenge complainant's credibility. (*Id.*, 123-4, 126-27, 129)

Though acknowledging that the Pathways reports were inconsistent with complainant's testimony, and that Petitioner was entitled to show motive, the court prohibited Petitioner from questioning complainant about **any** of these matters on **any** basis. (*Id.*, 179-81) Petitioner would be allowed to elicit that complainant lived at Pathways, a wilderness camp, but would not be permitted to question complainant beyond this. (*Id.*, 181, 183)

To no avail, Petitioner objected on constitutional due process grounds, for restriction of cross-examination. (7 R.R., 177, 202-03; 8 R.R., 71, 10-1)

### 3) *Testimony Of Deanna Hagy.*[1]

In his own case, outside the presence of the jury, Petitioner called Deanna Hagy, a Licensed Sexual Offender Treatment Provider, and complainant's sex offender counselor at Pathways. (8 R.R., 46-122) Hagy described complainant's mental health problems, the medications he took, and the treatments provided. *Id.* Hagy confirmed that complainant had been written up for numerous instances of

---

[1]Petitioner could have called Hagy in his own case, or to impeach the complainant's testimony denying specific acts of misconduct had the court permitted the questioning.

8

misconduct both close in time and on the day of the outcry. *Id.* Hagy confirmed complainant's self-report to Chris Daniel–that he led a secret life and a double life which required him to lie. *Id.* In treatment, complainant never took responsibility for his sexual behavior, and denied that he engaged in wrongful conduct. (*Id.*, 93-4)

At the conclusion of Hagy's testimony, Petitioner again asked to explore specific instances of complainant's conduct to show the context of the outcry, and as relevant to bias, and motive. (*Id.*, 111-14, 118) Again, the court precluded Petitioner from exploring these lines of inquiry. (*Id.*, 115, 121-2) The court would permit Hagy to testify about the characteristics of bipolar disorder generally, and whether the complainant's behaviors were consistent with these characteristics–but would not permit Hagy to describe complainant's specific conduct because it was not relevant to motive.[2] (*Id.*, 115-16, 120-22)

Petitioner renewed his constitutional objections. (*Id.*, 122)

---

[2]The defense declined to explore the complainant's mental health in this manner. Untethered from the complainant's specific acts, general questions as to the complainant's general behaviors consistent with bipolar disorder might well be seen as little more than a gratuitous effort to malign him.

## ARGUMENT

### A. Petitioner's Constitutional Claims Were Fully And Fairly Presented.

The Supreme Court of the United States makes clear that Fifth and Sixth Amendment rights are not coextensive with evidentiary rules, either state or federal. *See, e.g., Crawford v. Washington,* 541 U.S. 36, 61 (2004) ("we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence"); *Davis v. Alaska,* 415 U.S. 308 (1991) (right of confrontation to cast doubt on witness's credibility is paramount to state rule protecting the anonymity of a juvenile offender). So, too, this Court explains that, even if evidence is barred under state evidentiary rules, the Confrontation Clause may well require its admission. *Hammer v. State,* 296 S.W.3d 555, 568 (Tex.Crim.App. 2009).

A court may violate the Confrontation Clause when it inappropriately "precludes **an entire relevant area** of cross-examination." *Davis* at 314 (emphasis added). To establish a violation of the confrontation right, the defendant need only establish that "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination." *Delaware v. Van Arsdall,* 475 U.S. 673, 679-80 (1986)(emphasis added). This Court in *Potier v. State,* 68 S.W.3d 657,

663-65 (Tex.Crim.App. 2002), explains that a constitutional violation may arise where the court applies state law to exclude otherwise relevant and reliable evidence which "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense."); *see also Simmons v. State*, 548 S.W.2d 386, 388 (Tex.Crim.App. 1997) (it is a constitutional violation of the first order to deprive a defendant of the opportunity to offer **any** testimony regarding **possible** motive or bias); *accord United States v. Skelton*, 514 F.3d 433, 442 (5th Cir. 2008) ("cross-examination into **any** motivation or incentive a witness may have for falsifying his testimony **must** be permitted") (emphasis added); *cf. Johnson v. State*, 2014 WL 5583345 *5-6 (Tex.App. - Fort Worth, 2014) (no constitutional violation where, despite limitations on cross-examination, the jury had "a glut of evidence" before it from which it could infer that complainant fabricated his accusation). None of these cases hold that an appellant must demonstrate that each evidentiary ruling by the trial court was "clearly erroneous" as a predicate to review of his constitutional claims.

B. **Petitioner Made Timely And Proper Requests To Question Witnesses And Offer Evidence, Supported By Decisional Authority.**

In any event, though Petitioner did not argue that each of the trial court's evidentiary rulings was clearly erroneous—and it would have been impractical and repetitive to do so—he cited numerous cases in support of his claims that the evidence

11

the jury should have heard was admissible. Stated, briefly, Petitioner pointed out that same transaction contextual evidence is a proper subject of cross-examination, *Swarb v. State*, 125 S.W.3d 672, 681 (Tex.App. - Houston [1st Dist.] 2003), and is admissible where necessary to the jury's understanding of the charged offense. *Mayes v. State*, 816 S.W.2d 79, 86-7 (Tex.Crim.App. 1991); *Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Crim.App. 1993).

Petitioner pointed out that a defendant is entitled to offer evidence to rebut a false impression created by a witness's testimony. *Saglimbeni v. State*, 100 S.W.3d 429 434 (Tex.App. - San Antonio, 2002); *Sherman v. State*, 20 S.W.3d 96, 101 (Tex.App. - Texarkana, 2000) ([w]hen a witness leaves a false impression concerning a matter relating to his or her credibility, the opposing party is allowed to correct that false impression).

Petitioner pointed out that a complainant's history of troubled behavior and mental illness is a proper subject of cross-examination, and is admissible to show possible animus, ill will, or motive. *Perry v. State*, 236 S.W.3d 859, 865 Tex.App. - Texarkana 2007) ("the jury is entitled to hear evidence as to the mental status of a witness and the extent of his or her mental impairment"); *Saucier v. State*, 235 S.W.2d 903, 915-16 (1950) ("[t]he mental capacity of a witness is the proper subject of cross-examination and impeachment as bearing on credibility").

12

Petitioner pointed to cases which hold that a witness's custodial status, pending charges, or fear of prosecution or adverse consequences, is admissible to show bias and motive as it relates to credibility. *Alford v. United States*, 282 U.S. 687, 692 (1931) (permissible on cross-examination to show witness's custodial status so that the witness may be identified with his community so that jury could interpret his testimony in light of knowledge of his environment"). This Court, in *Irby v. State*, 327 S.W.3d 138, 45 (Tex.Crim.App. 2010), citing numerous authorities, explained that a witness's status and pending charges are admissible to show bias and motive so long as there is a causal connection or logical relationship to the case.

In short, though Petitioner did not address the trial court's errors on a ruling-by-ruling basis, his objections, the evidence he wished to offer, and the legal grounds for admissibility were all presented and argued to the Court of Appeals. We point out that under TEX. R. APP. P. 38.9, briefing rules are to be liberally construed, and the purpose of a brief is to "acquaint the court with the issues in a case and to present argument that will enable the court to decide the case." Substantial compliance with the rule is sufficient unless there is a defect of form or substance which the Court of Appeals may order corrected through amended or supplemental briefing so that there is satisfactory submission of the case. TEX. R. APP. P. 38.9(a) & (b). The Court of

Appeals never advised Petitioner that his brief was defective in form or substance, even through oral argument where Petitioner argued his constitutional claims.

## C.  In Sum.

Review should be granted under TEX. R. APP. P. 66.3(c) because the Court of Appeals decided an important question of law that conflicts with applicable decisions of the Court of Criminal Appeals and the Supreme Court of the United States.

## PRAYER

FOR ALL OF THESE REASONS, JOSE GUADALUPE MARTINEZ respectfully prays that this Honorable Court will grant his petition for discretionary review, and will remand his case to the Fourth Court of Appeals to review his constitutional claims on the merits, and for any other relief this Court deems appropriate.

Respectfully submitted,

NANCY B. BAROHN
1202 South Alamo Street
San Antonio, Texas 78210
(210) 226-4263
(913) 302-6708 (cell phone)
Texas Bar Number: 01796500
nbb@airmail.net

14

MEGAN V. COOK
Cook and Cook Law Firm
115 East Travis, Suite 1620
San Antonio, Texas 78205
(210) 271-2800
Texas Bar Number: 24065072
cookandcooklaw@gmail.com

*Attorneys for Mr. Jose Guadalupe Martinez*

By:    *S:s*   NANCY B. BAROHN
      NANCY B. BAROHN

## CERTIFICATE OF SERVICE

I certify that I served a true and correct copy of the foregoing *Petition for*

*Discretionary Review* through Texas eLaw Services on:

Mr. Danny Kindred
District Attorney for the
   38th Judicial District
3102 Avenue G
Hondo, Texas 78861

Mr. Edward Shaughnessy, III
Attorney at Law
206 East Locust Street
San Antonio, Texas 78212
shaughnessy727@gmail.com

State Prosecuting Attorney
201 West 14th Street
Austin, Texas 78701
information@spa.texas.gov

– on this the    18th    day of March, 2015.

*S:s*   NANCY B. BAROHN
NANCY B. BAROHN

## CERTIFICATE OF COMPLIANCE

1.     Mr. Jose Guadalupe Martinez's *Petition For Discretionary* complies with the word count requirements of TEX. R. APP. P. 9.4 because:

> The Petition contains 2,956 words, exclusive of the contents set out in Tex. R. App. P. 9.4(i)(1).

2.     The Petition complies with the typeface requirements of TEX. R. APP. P. 9.4 because:

> This Petition has been prepared in a proportionally spaced typeface using Word Perfect X-5, in 14-point Times New Roman style. Footnotes are in 13-point Times New Roman style.

DATED:    March 18, 2015.

/s/  NANCY B. BAROHN
NANCY B. BAROHN
*Attorney for Mr. Jose Guadalupe Martinez*

A-1

# APPENDIX:

*Jose Guadalupe Martinez vs. State of Texas,*
*Slip Op.* No. 04-12-00739-CR;
2014 WL 5464157 (Tex.App - San Antonio, October 29, 2014)
(not designated for publication)

WestlawNext

**Martinez v. State**
Court of Appeals of Texas, San Antonio.     October 29, 2014     Not Reported in S.W.3d   *(Approx. 7 pages)*

2014 WL 5464157
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

MEMORANDUM OPINION
DO NOT PUBLISH
Court of Appeals of Texas, San Antonio.

Jose Guadalupe Martinez, Appellant

v.

The State of Texas, Appellee

No. 04–12–00739–CR     Delivered and Filed: October 29, 2014

From the 38th Judicial District Court, Real County, Texas, Trial Court No. 2010–1132–DR, The Honorable Camile G. Dubose, Judge Presiding

### Attorneys and Law Firms

Bob Galvan, Daniel J. Kindred, Megan V. Cook, Nancy B. Barohn, for Jose Guadalupe Martinez.

Edward F. Shaughnessy, III, for the State of Texas.

Sitting: Catherine Stone, Chief Justice, Karen Angelini, Justice, Luz Elena D. Chapa, Justice

### MEMORANDUM OPINION

Opinion by: Luz Elena D. Chapa, Justice

*\*1* Jose Guadalupe Martinez appeals his convictions for sexual assault of a child. He contends the trial court erred by denying his motion to suppress his oral and written confessions, erred in refusing to submit his requested instruction on the voluntariness of those confessions, and violated his due process right to present a meaningful defense. He also asks this court to determine whether certain records that were submitted to the trial court in camera and subsequently sealed contained *Brady* material. We affirm.

### BACKGROUND
When he was sixteen-years old, the complainant made an outcry to a counselor about two instances of sexual conduct with Martinez. The outcry occurred at a facility called

Pathways, a juvenile treatment center where behavioral and psychological issues are addressed. The outcry was reported to the Real County Sheriff, who determined that his office should not lead the investigation because he was a personal friend of the complainant's family and Martinez's family. Instead, he asked Wayne Springer, an investigator with the Real County District Attorney's office to lead the investigation. In a forensic interview observed by Springer, the complainant told the interviewer that he had engaged in oral sex with Martinez on two occasions.

Sheriff Brice called Martinez and asked him to meet with Springer at the courthouse for an interview. Martinez was not informed of his *Miranda* rights or his rights under the Texas Code of Criminal Procedure prior to this interview. During the interview, Martinez told Springer of three instances of sexual conduct with the complainant. The first instance Martinez reported occurred at Martinez's shop. Martinez said the complainant performed oral sex on him. After this admission, Martinez reported a second instance that occurred when Martinez's family and the complainant's family were vacationing together. Martinez said the complainant began to perform oral sex on him but Martinez interrupted and stopped it. Martinez also reported a third instance that occurred at the complainant's house. Martinez said the complainant again performed oral sex on him, and Martinez then penetrated the complainant's anus with his penis. At the end of the interview, Springer gave Martinez the *Miranda* and Texas statutory warnings and then asked Martinez to reduce his oral statements to writing. Martinez did so, and Springer arrested him.

Martinez was charged with two counts of sexual assault against a child. *See* TEX. PENAL CODE ANN. § 22.011(a)(2) (West 2011). One count alleged Martinez intentionally or knowingly caused the penetration of the complainant's mouth with Martinez's sexual organ. *See id.* § 22.011(a)(2)(B). The other count alleged Martinez intentionally or knowingly caused the penetration of the complainant's anus with Martinez's sexual organ. *See id.* § 22.011(a)(2)(A). The jury convicted Martinez and assessed his punishment at five years' imprisonment for the first count, and ten years' imprisonment for the second count. The trial court ordered Martinez to serve his sentences consecutively.

## MOTION TO SUPPRESS

*2 Martinez contends the trial court erred by denying his motion to suppress all oral and written statements stemming from the interview with Springer. He argues the oral statements should be suppressed because they were the product of a custodial interrogation and he was not given the warnings required by *Miranda v. Arizona* and article 38.22 of the Texas Code of Criminal Procedure prior to the interview. Martinez also argues his written statements should have been suppressed, even though he was given the required warnings before making them, because those statements were the product of a two-step interrogation process designed to circumvent the requirements of *Miranda* and state law.

Under the Fifth Amendment, statements made by a suspect during a custodial interrogation are inadmissible unless certain warnings were given to the suspect before he makes those

statements. *Miranda v. Arizona,* 384 U.S. 436, 444–45 (1966); *see* U.S. CONST. amend. V. Article 38.22 of the Texas Code of Criminal Procedure also requires the suppression of statements made during a custodial interrogation unless certain statutorily prescribed warnings are given. TEX.CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2014); *Herrera v. State,* 241 S.W.3d 520, 526 (Tex.Crim.App. 2007). The police cannot evade the requirements of *Miranda* by engaging in a deliberate two-step interrogation process, whereby the police elicit unwarned statements from a suspect and then elicit the same statements after giving the suspect the required warnings. *Missouri v. Seibert,* 542 U.S. 600, 614–17 (2004) (plurality op.); *id.* at 620–22 (Kennedy, J., concurring in judgment); *Carter v. State,* 309 S.W.3d 31, 38 (Tex.Crim.App. 2010).

When seeking the suppression of unwarned statements, the defendant bears the burden to prove a statement was the product of a custodial interrogation. *Herrera,* 241 S.W.3d at 525; *see Gardner v. State,* 306 S.W.3d 274, 295 (Tex.Crim.App. 2009) ("Appellant has failed to establish that he was in custody during the telephone conversation."). A suspect is in "custody" for *Miranda* purposes if a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest under the circumstances of the interrogation. *Herrera,* 241 S.W.3d at 525. This "reasonable person" standard presupposes an innocent person. *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex.Crim.App. 1996). The Court of Criminal Appeals treats the requirement of "custody" under *Miranda* consistently with the requirement of custody under article 38.22. *Herrera,* 241 S.W.3d at 526.

Two discrete inquiries are necessary for a custody determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. *Id.* at 532. "The determination of custody must be made on an ad hoc basis, after considering all of the (objective) circumstances." *Dowthitt,* 931 S.W.2d at 255. A suspect may be in custody if there is probable cause to arrest and law enforcement officers do not tell him he is free to leave. *Id.* The officer's knowledge of probable cause must be manifested to the suspect and "[s]uch manifestation could occur if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers." *Id.* "[C]ustody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Id.; see State v. Saenz,* 411 S.W.3d 488, 496 (Tex.Crim.App. 2013) (holding the duration of an interrogation and the exercise of control over a suspect during an interrogation are circumstances that, when combined with a manifestation of probable cause, may establish an interrogation was custodial).

*\*3* The trial court's ultimate "custody" determination presents a mixed question of law and fact. *Herrera,* 241 S.W.3d at 526. Therefore, we afford almost total deference to a trial court's custody determination when the questions of historical fact turn on credibility and demeanor. *Id.* at 526–27. Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review a "custody" determination de novo. *Id.* at 527. If the

trial court's determination does not turn on credibility or demeanor, we apply "(1) a deferential standard of review to the trial court's factual assessment of the circumstances surrounding the interrogation, and (2) a de novo review to its ultimate legal determination that appellee was in custody." *Saenz,* 411 S.W.3d at 494. "[A] question 'turns' on credibility and demeanor 'when the testimony of one or more witnesses, if believed, is *always* enough to add up to what is needed to decide the substantive issue.' " *Id.* (quoting *Abney v. State,* 394 S.W.3d 542, 547 (Tex.Crim.App. 2013)).

Martinez argues that his entire interview with Springer was custodial because Martinez knew he was the focus of an investigation and because Springer had probable cause to arrest him at the beginning of the interview based on the complainant's forensic interview. In the alternative, Martinez argues the interview became custodial at the moment he admitted to the first sexual act with the complainant because that was a pivotal admission establishing probable cause to arrest. *See Ruth v. State,* 645 S.W.2d 432, 436 (Tex.Crim.App. [Panel Op.] 1979). While it is true that a suspect's "pivotal admission" can be a manifestation of probable cause to arrest, *see Dowthitt,* 931 S.W.2d at 256–57, such a manifestation is not sufficient to show Martinez's interrogation was custodial without the existence of other factors. *See Saenz,* 411 S.W.3d at 496; *Dowthitt,* 931 S.W.2d at 255; *Trejos v. State,* 243 S.W.3d 30, 46–47 (Tex.App.—Houston [1st Dist.] 2007, pet. ref d) ("We conclude that appellant's statements made during the initial interview ... provided sufficient probable cause to arrest him.... However, we conclude that the other circumstances present, when viewed in a light most favorable to the trial court's ruling, are sufficient to show that he was not in custody.").

The trial court's findings of fact support the trial court's conclusion that Martinez was not in custody during the interview with Springer for several reasons. First, the trial court found that there was no evidence that Martinez was coerced to be at the interview and that the interview between Martinez and Springer was "voluntarily initiated." *See Oregon v. Mathiason,* 429 U.S. 492, 495 (1977) (per curiam) (holding defendant's interrogation noncustodial where he voluntarily came to the police station, was informed he was not under arrest, was questioned for a half hour, and left the station afterwards). Second, the trial court found the entire interview lasted only fifty minutes and the time between the beginning of the interview and Martinez's first admission to sexual conduct with the complainant was twelve minutes. *See id.; cf. Dowthitt,* 931 S.W.2d at 256–57 (holding twelve hours between start of defendant's interrogation and his incriminating admission was a factor supporting conclusion defendant was in custody). Third, the trial court found there was no evidence that Martinez was physically prevented from leaving or that Martinez's freedom of movement was restricted in any way during the interview. *Cf. Dowthitt,* 931 S.W.2d at 256–57 (holding the fact that the defendant was accompanied by police officers on trips to the restroom and the fact that the police ignored the defendant's requests to talk with his wife were factors supporting conclusion defendant was in custody).

We hold Martinez failed to meet his burden to establish he was in custody when he made his oral and written statements to Springer. Because Springer was not obligated to give

Martinez any warnings during the interview, *Miranda* and article 38.22 did not require the suppression of his oral statements. Furthermore, because Springer was not required to give warnings at any time during Martinez's noncustodial interrogation, we need not consider whether Martinez's written statements were the product of a two-step interrogation process designed to evade the requirements of *Miranda*.

## JURY CHARGE

*\*4* At the charge conference, Martinez requested a jury instruction on the general voluntariness of his statements under article 38.22, section 6 of the Code of Criminal Procedure. (TEX.CODE CRIM. PROC. art. 38.22, § 6.) The trial court did not submit a section 6 instruction.

Section 6 is essentially independent of the other sections contained within Article 38.22, and it sets out the procedures for litigating voluntariness claims in all cases where a question is raised as to the voluntariness of a statement of an accused. *Oursbourn v. State,* 259 S.W.3d 159, 174 (Tex.Crim.App. 2008); *State v. Terrazas,* 4 S.W.3d 720, 724 (Tex.Crim.App. 1999). Claims of involuntariness under Article 38.22 can be, but need not be, predicated on police overreaching, and they could involve "sweeping inquiries into the state of mind of a criminal defendant who has confessed." *Oursbourn* 259 S.W.3d at 172. "Under Articles 38.21 and 38.22 and their predecessors, fact scenarios that can raise a state-law claim of involuntariness (even though they do not raise a federal constitutional claim) include the following: (1) the suspect was ill and on medication and that fact may have rendered his confession involuntary; (2) the suspect was mentally retarded and may not have "knowingly, intelligently and voluntarily" waived his rights; (3) the suspect "lacked the mental capacity to understand his rights"; (4) the suspect was intoxicated, and he "did not know what he was signing and thought it was an accident report"; (5) the suspect was confronted by the brother-in-law of his murder victim and beaten; (6) the suspect was returned to the store he broke into 'for questioning by several persons armed "with six-shooters." ' " *Id.* at 172–73 (internal citations omitted). A defendant is entitled to a general voluntariness instruction if he has raised a question of the voluntariness of his statement and a reasonable jury could find that the facts, disputed or undisputed, rendered the defendant unable to make a voluntary statement.[1] *Id.* at 176.

Martinez argues he was entitled to his requested instruction because there was evidence at trial that Springer lied to Martinez and made false promises during the interview and there was evidence he was "suicidal" at the end of the interview. He also argues that he suffered some harm from the trial court's refusal to submit the instruction.

At trial, Springer admitted that he lied to Martinez during the interview and basically told him that he would not be in trouble so long as any sexual encounters with the complainant were consensual. Although the Court of Criminal Appeals has not explicitly ruled on the question, it has indicated that a police officer's lies during an interview are not evidence supporting a section 6 instruction. *See Oursbourn,* 259 S.W.3d at 181–82 (considering evidence the defendant was lied to by the police about the evidence against him in the context of an

article 38.23 instruction, but not an article 38.22 general voluntariness instruction). Martinez does not provide any authority that the lies told by Springer demonstrate the kind of police overreaching that can support the submission of a general voluntariness instruction under state law.

*5 Martinez also argues that Springer's testimony showed Martinez's mental state was affected because he was "suicidal." Springer testified that at the end of the interview he asked Martinez what should be done to someone who does things like this. Martinez replied they should be severely punished. Springer testified he thought that this response was shocking and unusual, and he decided to arrest Martinez at that time because he thought he might hurt himself or somebody else. On cross-examination, Springer expressly declined to characterize Martinez as suicidal at the end of the interview. We conclude Springer's testimony was insufficient evidence from which a reasonable jury could determine Martinez's statements were involuntarily made. *Cf. Oursbourn,* 259 S.W.3d at 181 (holding general voluntariness instruction should have been submitted where evidence showed defendant was initially declared incompetent to stand trial two weeks after his interrogation and confession, a psychologist testified defendant was manifesting symptoms of his bipolar disorder during interrogation, and defendant's mother testified defendant was in a "manic" state shortly before and after his arrest).

We hold Martinez was not entitled to a general voluntariness instruction.

## DUE PROCESS

In his first two issues for review, Martinez complains the trial court erroneously restricted his examination of three witnesses and the trial court's restrictions were so severe that his constitutional right to present a meaningful defense under the Sixth and Fourteenth Amendments was violated.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " *Holmes v. South Carolina,* 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky,* 476 U.S. 683, 690 (1986)). "[T]here are two distinct scenarios in which rulings excluding evidence might rise to the level of a constitutional violation: 1) a state evidentiary rule which categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence which is vital to his defense; and 2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence which forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Wiley v. State,* 74 S.W.3d 399, 405 (Tex.Crim.App. 2002) (internal citations and quotation marks omitted). "In the first category, the constitutional infirmity is in the arbitrary rule of evidence itself." *Id.* "In the second category, the rule itself is appropriate, but the trial court erroneously applies the rule to exclude admissible evidence to such an extent that it effectively prevents the defendant from presenting his defensive theory." *Id.* "In other words, the erroneous ruling goes to the heart of the defense." *Id.*

Martinez complains that the trial court prohibited him from asking any witness about any specific instances of the complainant's conduct or background, from asking any questions to show the context in which the complainant's outcry was made, from asking any questions to rebut the false impressions of the circumstances surrounding the complainant's outcry, and from exploring any matter which would show the complainant's bias, motive, or self-interest at the time of the outcry except through general character questions. Martinez's complaint applies to his cross-examination of the complainant and the complainant's father. It also applies to his direct examination of his own witness—namely, the person to whom the complainant made his outcry.

Martinez's brief contains a summary of the proffer hearings for all three witnesses and the trial court's reasons for excluding the evidence. Martinez does not argue that any state evidentiary rule arbitrarily deprived him of the opportunity to offer otherwise relevant and reliable evidence that was vital to his defense. Instead, Martinez appears to argue the trial court erred in every ruling it made during the proffer hearings and that these erroneous rulings prevented him from presenting a meaningful defense.

*6 Martinez, however, does not explain why each ruling made by the trial court was "clearly erroneous." Instead, he cites and discusses authority for broad evidentiary propositions that evidence of a witness's bias or motive, evidence to correct a false impression, and contextual evidence are admissible. Although some of Martinez's proffered evidence may have been admissible to show bias or motive or for some other evidentiary purpose, that alone does not establish that the trial court clearly erred by excluding the evidence. *See* *Delaware v. Van Arsdall,* 475 U.S 673, 679 (1986) (holding a trial court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."); *Hammer v. State,* 296 S.W.3d 555, 561 (Tex.Crim.App. 2009) ("Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules" and "[t]hus, most questions concerning cross-examination may be resolved by looking to the Texas Rules of Evidence"). Many of the trial court's rulings were based on its conclusions that the proffered evidence was not relevant or was otherwise barred under other evidentiary rules such as Rule 403, Rule 404, or Rule 608. But Martinez fails to argue or explain how each one of the trial court's rulings excluding his proffered evidence was "clearly erroneous"—a necessary prerequisite to prevail on his due process claim. *See* *Wiley,* 74 S.W.3d at 406. We hold Martinez has failed to present his due process argument in a way that would allow this court to conclude his constitutional right to present a meaningful defense was violated. *See Allen v. State,* No. 14–12–01086–CR, 2014 WL 3587372, at *8 (Tex. App—Houston [14th Dist.] July 22, 2014, pet. filed) (mem. op., not designated for publication) ("*Wiley* is of no assistance to appellant as appellant has not established that the trial court clearly erred when it sustained the State's hearsay objection to this testimony.").

## SEALED RECORDS

Finally, Martinez asks this court to examine certain sealed records for *Brady* material. *See Brady v. Maryland,* 373 U.S. 83 (1963) (holding the State has a duty to disclose material exculpatory evidence to the defense). Those records contain the complainant's medical records from Laurel Ridge Hospital where he stayed after the sexual encounters but before his outcry. The State offered the records to the trial court for an in camera inspection. The trial court inspected the records and determined they did not contain *Brady* material. We have examined the records, and we hold the trial court correctly determined that there is no information in those records which *Brady* would have required the State to disclose.

## CONCLUSION

We affirm the trial court's judgments on each count.

### Footnotes

1          The State argues the trial court did not err in denying the instruction because the interview was noncustodial. We reject this argument because the Court of Criminal Appeals has held that section 6 "applies to both an accused's custodial and non-custodial statements because it provides that only 'voluntary' statements may be admitted." *Oursbourn,* 259 S.W.3d at 171; *see also Terrazas,* 4 S.W.3d at 727 (overruling prior precedent limiting section 6's applicability to custodial statements).

**End of Document**                                © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Print this page

# Envelope 4553535

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 03/18/2015 04:39:08 PM |
| Case Number | |
| Case Description | |
| Assigned to Judge | |
| Attorney | Nancy Barohn |
| Firm Name | Nancy B. Barohn, Attorney |
| Filed By | Nancy Barohn |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Nancy B. Barohn |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 7490173 |
| Order # | 004553535-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition For Discretionary Review |
| Reference Number | |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 03/19/2015 10:05:14 AM | The front cover of your petition has the incorrect Court of Criminal Appeals case number. You have ten days to submit a corrected petition. |

## Documents

| | | |
|---|---|---|
| *Lead Document* | MARTINEZ.PDR.pdf | [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Matthew Paul information@spa.texas.gov | State Prosecuting Attorney | EServe | Sent | Yes | 03/18/2015 05:09:31 PM |